Mr. Howard, good morning. Good morning, your honors, and thank you. For the record, my name is Mark Howard and I represent the appellant Wilfredo Melendez in this case. This is a drug case that involves issues of unanimity in the jury instructions and the reasonable doubt instructions as affected by the way the district court judge answered two of the factual background on the cases necessary to understand these issues. For several months prior to February of 2010, DEA was investigating a target by the name of Rafael Guzman. They had several deals with Mr. Guzman, several recorded phone calls. At no point during the several months of investigation did the name Melendez come up at all. He was not a target. He was not known in any way. They had no knowledge of any involvement of Mr. Melendez. On February 2nd of 2010, the DEA initiated what they refer to as a reverse sting. As I'm sure the court is aware, that means no drugs were involved, were ever going to be involved, and the entire deal is based upon a lie by government agents. What the agents had negotiated with Mr. Guzman was the so-called sale of five kilograms of cocaine. The way the arrangement was supposed to work is Mr. Guzman was going to pay for three of those fictitious kilos for a price of approximately $88,000, I believe it was, or $86,000, and that two of the kilograms, fictitious again, were going to be, quote-unquote, fronted by the government. That means we'll give them to you, you pay once you sell. The deal was set up for February 2nd of 2010 to occur at a restaurant in Quincy. Prior to the arrival of Mr. Guzman, the agent, an agent Nieves, called Mr. Guzman, made sure he was on his way, and asked if he was going to be surprised. He said, no, I have a friend. That friend turned out to be Mr. Melendez. At the deal, again, no cocaine was shown. The money was in the back seat. There was discussion that Mr. Melendez was the one putting up the money for the three kilos. When Mr. Guzman got out of the vehicle to speak to Mr. Nieves out of Mr. Melendez's presence, the discussion was, the sale price here is actually going to be $92,000. I'm taking $3,000 off every, of the three kilograms, off each kilogram when I sell over to Mr. Guzman. A very clear indication that Guzman is in this for only three kilos. His, quote-unquote, co-conspirator is going to sell to him. From the very beginning of this case, that was Mr. Melendez's defense. I am guilty of a substantial conspiracy. He has acknowledged that from the beginning. It was his defense at trial. But, he says, I was in this only for the three kilos. Whatever was going to happen with those other two, that was Guzman's separate deal. The government obviously disagreed with that. Despite the implication of the evidence of what Mr. Guzman said at the scene to the agent, after the arrest, and in exchange for a very favorable sentence, Mr. Guzman changed his story and said, no, no, no, no, we were both in it for all five. Mr. Guzman, in fact, ended up with a sentence of about four and a half years, and that includes all of the other deals he was involved in. Mr. Melendez, of course, is doing 12 years. The issue arises then at trial with respect to the unanimity requirement. A verdict slip was issued to the jury, which laid out first a question for them to answer, was there guilt on the conspiracy? Not a contested issue at trial. The second then was the weight, and the judge laid out three levels of weight. And then the final question had to do with the 924C gun offenses of which Mr. Melendez was acquitted. During the deliberations, and in fact only within a few minutes, it was about two hours after deliberations started, inclusive of lunch, the jurors asked the following question. If a conspiracy exists, if only one conspirator knew of the entire amount of the deal, are both parties responsible for the entire amount as from the verdict sheet, 1B states, distributed by the conspirators, plural. The implication in the question, in fact, I think it's more expressed than an implication, is we as a jury are concerned that sure, both of these conspirators are accepting five kilograms. We know that that's what's talked about. But do they both get assigned all five kilograms if one of them is taking three and going his own way, and one of them is taking two and going his own way? That was the defense. That was clearly what the jurors were concerned about. The court answers the question, the conspirators must agree as to the object of the conspiracy. We all agree on that. The object is the distribution of controlled substances. In question 1B, this means that the conspirators must agree on the amount of the drugs that will be distributed by members of the conspiracy. In our view, all that really does is restate the question. We know that both people are going to be distributed. The issue is, is the distribution entirely the object of the conspiracy, or did these two people split those weights, the three and the two? The judge's answer didn't really do the trick. Was there an objection to it? There was not. This is plain error review. Okay. The question becomes even more significant. Excuse me, and there's nothing wrong, so far at least, with the answer. It may not be specific as to the point, but the court hasn't misstated anything. Hasn't misstated the law, but hasn't answered the question either, in my view. All he's really done is restate that question. It becomes significant when three hours later, the jurors ask the next question. That first question, in my view, clearly evinces an issue with the jury as to how to handle these five kilos, three versus two. And then the following question comes along. And this was at about five o'clock in the afternoon, and the question was simply, must we be unanimous on all three count decisions? By three count decisions, we presume they mean the three questions in the verdict slip, because those are the only three questions that they had to answer. And there weren't three counts, there were only two counts. Must we be unanimous on all three counts? Interestingly, in the initial debate among the court and the parties about that question, the court says, well, the answer is yes, of course. If the judge had said that to the jury, I wouldn't be here. But he didn't say that to the jury. Instead, the judge, after a discussion, the judge says, I think what's really going on here is they are preparing to hang. And I want to give them an Allen-type charge, a dynamite charge. Both sets of lawyers say, no, it's way too soon for that. But the judge doesn't like that answer. The judge wants to implore this jury to reach a decision. So instead of saying, yes, you must be unanimous, the judge says this, ladies and gentlemen of the jury, you should make every effort to reach a unanimous decision regarding each of the questions put to you on the verdict slip. There's no sense at all that this jury is preparing to hang. No sense at all that they need to be dynamited or given an Allen charge. There is no reason to believe that the jury is going to take that question and say, or that answer, and all the judge is really doing here is imploring us to reach a decision on a unanimous basis, on its text, and in its context. The answer means, you don't have to reach a unanimous decision. You should just make every effort to do so. That completely dilutes, well, it eviscerates the unanimity requirement and dilutes the reasonable doubt requirement. And lo and behold, just a few minutes later, we have a verdict. Can I ask you the same question? Any objection? There was no ultimate objection to that answer. Okay. Certainly the defense counsel said, no, we shouldn't have a dynamite charge. But as to this particular phraseology, no, he did not object. And I concede that, once again, we're on plain error review. But I do believe that the elements are clearly met here. There's no question in my mind that that is a wrong answer, that that misstates the law and tells the jury that they don't have to be unanimous. That misstates the law? What's wrong about telling a jury they have to make every effort to agree? I mean, I can understand an argument that it doesn't answer the question. Because it doesn't tell the jury to make every effort to agree. It tells the jury you don't have to be unanimous. Excuse me, the judge said that? It says you should make every effort to reach a unanimous decision. But you don't have to be unanimous. But that last part, after the but, you're adding. The judge didn't say that. He said you should make every effort to reach a unanimous decision regarding each of the questions. Right. And I don't see what's wrong with that as a statement. Nothing wrong with that. It may not answer the question. Because the jury gets that answer and says, oh, okay, we don't have to be unanimous. We should try, but we don't have to be. Maybe. And it's the maybe that undermines the confidence in this court that the result was right. Because the defense was so strong, because the issue, even as evidenced in the first question, was whether all five kilos should be applied to both conspirators as the object of this conspiracy. That when they are relieved of the obligation to be unanimous about the weight, it becomes easy. And I'm obviously out of time, Your Honor, so I'm going to quickly wrap up by saying I believe we have reached or met the elements of plain error review. Hansel, at the end, the jury foreperson was asked whether the verdict was unanimous. And the foreperson said, yes, the verdict was unanimous. The hypothetical harm didn't happen. Well, as far as we know, because the jurors may be answering that question only in the context of the instructions they were given. All right. With respect to the two crimes, conspiracy and the firearms charge, yes, we were unanimous. But we weren't told we had to be with respect to the other questions.  Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Kelly Lawrence for the United States. Turning to the last question asked, the government's view is that the jury's return of a unanimous verdict, which is recorded in the record, and there's no reason to doubt that its representation was accurate, that it did return a unanimous verdict as to each of the three questions asked, makes any potential error, and we don't believe there are any errors in the instructions given, harmless as to the unanimity charge. With regard to the reasonable doubt instruction on the conspiracy charge and the drug weight specifically, the district court correctly instructed the jury that it had to find, with respect to drug weight, that the defendant, along with his co-conspirator, Guzman, agreed together to distribute the amount of drugs, five kilograms, as the government charged, three kilograms as the defendant claimed. There's simply nothing in the record to suggest that, well, evidentiary, there was no evidence in the record to suggest that the defendant did not know that the entire transaction involved five kilograms. He claimed that he intended to only sell three and that Guzman would sell the other two. But under the law of conspiracy, if they agreed together that the transaction would involve five kilograms, Mr. Melendez, the defendant, would be guilty of conspiring to distribute that amount, regardless of who would distribute it, and the court properly instructed the jury to that end in its substantive instructions. And its answer to the jury's question also stated the law correctly when it said the amount of drugs the jury had to find was the amount of drugs that the conspirators together intended to distribute. There's no error, let alone plain error, in the court's instruction on that matter. If the court has no further questions, we would rest on our brief. Thank you. Thank you.